Filed 10/22/20  P. v. Anderson CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL KELLY ANDERSON,<br><br>    Defendant and Appellant. | A156857<br><br>(Alameda County<br>Super. Ct. No. 114102-A) |

A jury convicted defendant of first degree murder, attempted murder, second degree robbery and possession of an assault weapon, and his convictions were affirmed on appeal in 1994.  Over two decades later, in 2019, defendant filed a petition for writ of habeas corpus and subsequently filed an amended petition for writ of habeas corpus, both pursuant to Senate  Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), claiming eligibility for resentencing.  The trial court treated each petition as a petition for resentencing pursuant to Penal Code[1] section 1170.95.  Though each petition requested appointment of counsel, the trial court denied the petitions without

---

[1] All statutory references are to the Penal Code.

appointing counsel because it determined defendant had not made a prima facie showing he was entitled to relief.[2]

Defendant's sole contention on appeal is the trial court deprived him of his statutory and constitutional right to counsel on his initial resentencing petition. This division recently held in *People v. Cooper* (2020) 54 Cal.App.5th 106 (*Cooper*) that once a defendant files a facially adequate petition for resentencing, he or she is entitled to appointment of counsel. We follow *Cooper*. In doing so, we reject the contrary conclusion reached in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 (*Lewis*) and *People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted March 18, 2020, S260493 (*Verdugo*) that section 1170.95 requires two prima facie reviews and entitles a petitioner to counsel only during the second one.[3] We nonetheless conclude that the failure to appoint counsel in this case was harmless error because based on the record of conviction, defendant was ineligible for relief as a matter of law.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts from the 1994 nonpublished opinion of this court, *People v. Anderson* (July 5, 1994, A061968) (*Anderson I*).

---

[2] Defendant filed a related petition for writ of habeas corpus in this court (case No. A156958), raising the same claims he asserted in his habeas petitions in the trial court and in this appeal. We deny the petition today by separate order.

[3] The Supreme Court limited the issues on review in *Lewis* to the following: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]" (*People v. Lewis* (Mar. 18, 2020, S260598).)

2

A woman named Toni G. liked to hang out at Papa Joe's Car Wash in Oakland. The manager, Peter "Pete" H., did not like Toni hanging out there even though her uncle owned the car wash. In January 1992, Toni contacted defendant and suggested he "talk to" Hulbert about "disrespecting" her. She wanted defendant to "slap [Pete] around." After Toni told defendant that Pete had money at the car wash, he gathered his friends, Edward Morgan and Jeffery Yates, drove in a stolen van to the car wash, and parked in front of the office. Defendant was armed with an Uzi assault rifle, while Yates was carrying two loaded .38-caliber revolvers.

Morgan entered the office. While Morgan was speaking with Pete H., defendant and Yates opened the van's doors and pointed their weapons at Pete. As defendant and Yates provided cover, Morgan stole approximately $1,600 in cash.

As Morgan was leaving the office, defendant and Yates started shooting, firing at least 15 shots between them. During the attack, Yates apparently stepped into defendant's line of fire and was struck by a bullet which passed through his chest, killing him. Pete H. was seriously injured when a shot passed through his shoulder. Defendant and Morgan walked away from the car wash leaving Yates's body behind. As they did so, they passed several witnesses, one of whom heard defendant tell Morgan, "It had to be done."

Two and a half weeks later, defendant was arrested near the car wash. He had in his possession the Uzi which was used in the robbery, a loaded .25-caliber weapon, and a police scanner.

An information, filed in December 1992, charged defendant with murder (§ 187), attempted murder (§§ 187, 664), robbery (§ 211), possession

of an assault weapon (former § 12280, subd. (b)), and felon in possession of a firearm (former § 12021.1). Firearm and prior convictions were also alleged.

As relevant to this appeal, the jury was instructed it could find defendant guilty of murder under the theories of felony murder and provocative act. No unanimity instruction was given.

The jury found defendant guilty of all the charges and found the enhancement allegations to be true. The trial court sentenced defendant to an aggregate term of 40 years to life.

In 2019, defendant filed a petition for writ of habeas corpus alleging that he was entitled to resentencing under Senate Bill 1437. He requested the appointment of counsel. The trial court construed the writ of habeas corpus as a petition for resentencing under section 1170.95. It denied the petition for resentencing, finding defendant failed to make a prima facie case because he was the actual killer or provoked a man to shoot his accomplice.

Defendant then amended his petition to add a ground that a special circumstance allegation was not found against him. Once again, he asked for counsel. As before, the court treated the writ of habeas corpus as a petition for resentencing pursuant to section 1170.95, and after reviewing our prior opinion, *Anderson I*, *supra*, A061968, upholding his conviction, denied the petition for failure to make a prima facie showing that defendant was entitled to relief.

Defendant timely appeals from the trial court order denying his petition for resentencing.[4]

---

[4] The order denying defendant's petition for resentencing was filed on January 30, 2019. The order denying defendant's amended petition for resentencing was filed on March 11, 2019.

4

## II.  DISCUSSION

### A.  *Senate Bill 1437 and Section 1170.95*

Section 1170.95 was enacted as part of the legislative changes effected by Senate Bill 1437.  "Senate Bill 1437 was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Specifically, "The bill redefined malice under section 188 to require that the principal acted with malice aforethought.  Now, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)  Senate Bill 1437 also amended section 189, which defines the degrees of murder, by limiting the scope of first degree murder liability under a felony-murder theory.  (§ 189, subd. (e).)" (*People v. Turner* (2020) 45 Cal.App.5th 428, 433.)

By adding section 1170.95, the Legislature created a new petitioning procedure for eligible defendants to have their murder convictions vacated and seek resentencing on the remaining counts.  Pursuant to section 1170.95, a person convicted of felony murder or murder under a natural and probable consequences theory may file a petition for resentencing.  To initiate the process, first, the petition must include a declaration by the petitioner stating he or she is eligible for relief because "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first

5

degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a), (b)(1)(A).) Second, the petition must include "[t]he superior court case number and year of the petitioner's conviction." (*Id.*, subd. (b)(1)(B).) Lastly, the petition must state "[w]hether the petitioner requests the appointment of counsel. (*Id.*, subd. (b)(1)(C).)

If the petition does not include any of these three requirements, and the missing information "cannot be readily ascertained by the [trial] court, the court may deny the petition without prejudice" to filing another petition that includes the required information. (§ 1170.95, subd. (b)(2).) A petition with the required information under section 1170.95, subdivision (b) is considered a facially sufficient petition. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323, review granted.)

Under the procedure set out in section 1170.95, subdivision (c) (section 1170.95(c)), the court determines whether the petitioner is entitled to an evidentiary hearing. "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

6

***B. Defendant Was Entitled to Appointment of Counsel Under***
***Section 1170.95 upon the Filing of His Facially Sufficient Petition***

In the instant matter, when defendant filed his petition for resentencing, he requested the appointment of counsel. The court did not appoint counsel. Instead, the court went behind the allegations in defendant's petition, and relying on the prior appellate opinion, determined defendant had failed to make a prima facie showing of eligibility under Senate Bill 1437. Defendant contends the trial court's failure to appoint counsel deprived him of his statutory and constitutional right to counsel on his resentencing petition. At issue is when the right to counsel arises under section 1170.95(c).

We review questions of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

The first cases to examine whether a defendant is entitled to appointment of counsel after filing a facially sufficient petition for resentencing were *Verdugo, supra,* 44 Cal.App.5th 320, review granted, and *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted. Both cases concluded section 1170.95 requires two prima facie reviews, occurring at different chronological times with the right to counsel attaching only at the second stage of review.

In *Lewis*, the appellate court following its review of the "overall structure" of the statute, construed "the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.' (§ 1170.95, subd. (c).)" (*Lewis*, *supra*,

7

43 Cal.App.5th at p. 1140, review granted.)  In short, the trial court is not required to appoint counsel "unless and until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute." (*Ibid*.)  Because the trial court denied the defendant's petition for failure to make a prima facie showing that the statute applied to his murder conviction, *Lewis* concluded the "defendant was not entitled to the appointment of counsel." (*Ibid*.)

*Verdugo* followed suit, concluding the filing of a facially sufficient petition does not trigger the appointment of counsel.  In rejecting Verdugo's assertion he was entitled to counsel, the appellate court explained, "[T]he relevant statutory language, viewed in context, makes plain the Legislature's intent to permit the sentencing court, before counsel must be appointed, to examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that petitioner falls within the provisions of section 1170.95—that is, a prima facie showing the petitioner may be eligible for relief because he or she could not be convicted of first or second degree murder following the changes made by Senate Bill 1437 to the definition of murder in sections 188 and 189." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323, review granted.)  Thus, *Verdugo* concluded the superior court had jurisdiction "to deny his section 1170.95 petition on the merits without first appointing counsel and allowing the prosecutor and appointed counsel to brief the issue of his entitlement to relief." (*Ibid*.)

Our division, however, in *Cooper*, held that as soon as a petitioner files a facially sufficient petition, the trial court is required to appoint counsel and provide the parties with an opportunity to submit briefing before denying the petition.  In reaching this conclusion, we disagreed with the *Lewis* and *Verdugo* decisions.  (*Cooper*, *supra*, 54 Cal.App.5th at p. 109.)

8

*Cooper* declined to "adopt the view that section 1170.95(c) requires two prima facie reviews—much less two reviews that are substantively different—and entitles a petitioner to counsel during only the second one." (*Cooper*, *supra*, 54 Cal.App.5th at p. 118.) Rather, *Cooper* read section 1170.95(c)'s first sentence—"The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section"—as a topic sentence explaining the trial court's task before issuing an order to show cause. In turn, the following sentences then specify the procedure in carrying out that task. (*Cooper*, at p. 118.)

*Cooper* found support for its conclusion in the statute's language. Though the opinion's analysis accepted that the subdivisions of section 1170.95 generally proceed chronologically vis-à-vis each other, and subdivision (c) also generally proceeds chronologically, it determined "this hardly requires the conclusion that *every single sentence* of subdivision (c) does so and that the provision's references to a 'prima facie showing' in two different places mean there must be two reviews to occur at different times." (*Cooper*, *supra*, 54 Cal.App.5th at p. 118.)

Moreover, *Cooper* explained that "[i]nterpreting section 1170.95(c)'s references to a 'prima facie showing' as referring to separate steps results in an anomalous procedure that requires, a trial court to perform two different reviews of a facially sufficient petition before issuing an order to show cause: one to determine whether the petitioner has made a showing that he or she 'falls within the provisions of this section,' and one to determine whether the petitioner has made a showing that he or she 'is entitled to relief.' " (*Cooper*, *supra*, 54 Cal.App.5th at p. 119.)

*Cooper* also noted *Verdugo* found determinative that there is a difference between the " 'prebriefing' " determination whether the petitioner has made a prima facie showing he or she " ' "falls within the provisions" ' " of section 1170.95(c) and the " 'postbriefing' " prima facie showing that the petitioner is entitled to relief which is required for issuance of an order to show cause. (*Cooper*, *supra*, 54 Cal.App.5th at p. 119, citing *Verdugo*, *supra*, 44 Cal.App.5th at p. 329, review granted.) Some courts have concluded the difference between the two reviews is that the first addresses " 'eligibility' " for relief, while the second addresses " 'entitlement' " to relief. (*Cooper*, at p. 119.) *Cooper* observed, "Under this explanation, the first review requires the trial court to 'determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law,' and the second review requires the court to 'take [the] petitioner's factual allegations as true and make a preliminary assessment regarding whether he or she would be entitled to relief if the factual allegations were proved.' " (*Ibid.*) The *Cooper* court acknowledged the difference between eligibility for relief and entitlement to relief, was "willing to assume that the phrase 'falls within the provisions of this section' refers to eligibility, not entitlement," and agreed that " '[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in *meaning*.' " (*Ibid.*, italics added.)

Viewing section 1170.95 "as a whole," however, the court found this section "does not support the supposition that the Legislature intended to distinguish meaningfully between eligibility for relief and entitlement for relief, because the statute uses these concepts interchangeably in several

10

places," citing to examples in subdivision (d)(3) and (2). (*Cooper*, *supra*, 54 Cal.App.5th at p. 119.) *Cooper* determined "section 1170.95's interchangeable references to eligibility and entitlement, repudiate the notion that the concepts have different meanings." (*Id*. at p. 120.)

Relying on the dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892 (*Tarkington*), review granted August 12, 2020, S263219, *Cooper* then explained there was another text-based reason why section 1170.95 does not establish two prima facie reviews: "The briefing deadlines the provision establishes run from 'service of the petition' not from any action by the trial court." (*Cooper*, *supra*, 54 Cal.App.5th at pp. 120–121.) The *Tarkington* dissent noted: " '[I]f the Legislature had anticipated that the court would undertake its own review of the merits of the petition as an intermediate step before appointing counsel, it would have calculated the deadlines not from the date of service of the petition but instead from the date the court completed its initial review. And though the Legislature required the prosecution to respond within 60 days of being served with the petition, it did not create a deadline for the court to conduct an intermediate review. Nor is there any provision allowing the court to relieve the parties of these statutory requirements. [Fn. omitted.] [¶] By omitting those steps, the Legislature signaled it did not intend for the court and prosecutors to duplicate their efforts by conducting the same review of the same documents at the same time.' " (*Cooper*, at p. 121, quoting *Tarkington*, at p. 920 (dis. opn. of Lavin, J.).)

*Cooper* further rejected the notion there is a policy-based justification for the prevailing interpretation of section 1170.95(c)—that is " ' "[i]t would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of

11

the petition . . . ." ' " (*Cooper*, *supra*, 54 Cal.App.5th at p. 121.) In fact, in *Cooper*, we came to the opposite conclusion, finding "it does *not* conserve judicial resources to require trial courts to undertake a preliminary review of the record of conviction—which may not even be readily available—and to draw legal conclusions from this review without input from counsel, when prosecutors are simultaneously doing the same thing to comply with the statute and respond to petitions within 60 days." (*Ibid*.) As we stated in *Cooper*, once the prosecutor has weighed in, the trial court "can more efficiently and effectively weed out unmeritorious petitions . . . . And if the petition is clearly without merit, the prosecution will presumably say so." (*Ibid.*)

Citing to Senate Bill 1437's legislative history, *Verdugo* determined the Legislature intended that the superior court perform a "substantive gatekeeping function" to screen out ineligible petitioners before devoting additional resources to the resentencing process. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 331, review granted.) In reaching this conclusion, *Verdugo* read section 1170.95(c) to provide "if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition." (*Verdugo*, at p. 330.) Finding that *Verdugo* misread section 1170.95(c), *Cooper* found subdivision (c) "expressly requires that a prosecutor '*shall* file and serve a response within 60 days of service of the petition,' without the need for any action by the trial court." (*Cooper*, *supra*, 54 Cal.App.5th at p. 122, italics added by *Cooper*.) Thus, according to *Cooper*, the statute contradicts the view that a prosecutor is not required to respond to a petition until the court requests a response, "preserving the risk of duplicative efforts if the two-reviews framework is followed." (*Ibid*.)

12

Finally, in rejecting *Lewis*'s and *Verdugo*'s interpretation of section 1170.95, *Cooper* found the "legislative evolution" of this section demonstrated an "increasing reluctance by the Legislature to impose on trial courts the responsibility to perform an initial substantive review." (*Cooper*, *supra*, 54 Cal.App.5th at p. 122.) First, the court pointed out that in the original version of Senate Bill 1437, the bill required the trial court upon receiving the petition for resentencing to request five categories of documents in addition to requiring the court upon receipt of a petition to give notice to the parties and request both parties file responses which were not subject to any statutory deadlines. (*Cooper*, at p. 122.) Then in the second version of the bill, the *Cooper* court noted the bill eliminated the requirement of procuring documents from the record of conviction, and it mandated the parties respond within 60 days of receiving the trial court's notice. (*Ibid.*) Lastly, in the third and final version of the bill, the prosecutor's response was mandatory and due 60 days after the petition's filing with the petitioner's optional reply due 30 days from the prosecutor's response. (*Ibid.*) Taken as whole, *Cooper* concluded these changes "strongly suggest" the Legislature intended the prosecutor to take the lead in identifying the petitioners entitled to relief as a matter of law, not the court. (*Ibid.*)

In sum, *Cooper* holds a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel. In reaching this conclusion, *Cooper* has parted ways with the decisions interpreting section 1170.95(c) as requiring two prima facie reviews with the right to counsel attaching only at the second stage of review. (*Cooper*, *supra*, 54 Cal.App.5th at p. 123.)

Here, as in *Cooper*, after defendant filed a facially sufficient petition for resentencing and requested appointment of counsel, the trial court failed to

appoint counsel. Instead it reviewed the underlying appellate opinion, concluding defendant had not made out a prima facie showing he was entitled to resentencing. And like *Cooper*, we decline to adopt the two-tier prima facie review procedure set out in *Lewis* and *Verdugo* and followed in other subsequent cases. Because we agree with *Cooper*'s analytical framework described above, we conclude the trial court erred in failing to appoint counsel for defendant, following his filing of a facially sufficient petition.

## C. *The Trial Court's Failure to Appoint Counsel Was Harmless*

The Attorney General asserts any deprivation of counsel here was harmless error because the trial court correctly concluded defendant was ineligible for resentencing as a matter of law. We agree.

At the outset, we reject, as we did in *Cooper*, defendant's argument that failure to appoint counsel is structural error requiring reversal without regard to prejudice.[5] (See *Cooper*, *supra*, 54 Cal.App.5th at p. 123 [failure to appoint counsel subject to harmless error analysis]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 675 [same]; *Tarkington*, *supra*, 49 Cal.App.5th at p. 910, review granted ["where ineligibility is ascertainable based on the record of conviction, no additional record need be 'developed' " and representation by counsel could do nothing to change that fact].) We need not, however, determine whether to apply the federal beyond a reasonable doubt standard

---

[5] Defendant contends *People v. Rouse* (2016) 245 Cal.App.4th 292, 301 holds that deprivation of counsel is "per se prejudicial" and "clearly holds that where there has been a deprivation of counsel, the judgment must be overturned without further analysis." In fact, *Rouse* held that a defendant *found eligible* for resentencing under section 1170.18 was entitled to counsel. (*Rouse*, at p. 301.) It said nothing about whether reversal is required for failure to appoint counsel when a defendant is *ineligible as a matter of law* for resentencing on a section 1170.95 petition.

14

(*Chapman v. California* (1967) 386 U.S. 18, 24) or the state reasonably probable standard (*People v. Watson* (1956) 46 Cal.2d 818, 836) because the record of conviction demonstrates defendant was ineligible for relief as a matter of law, and thus he suffered no prejudice, even under the stricter federal standard.

We conclude the trial court correctly determined defendant was ineligible for resentencing as a matter of law based on its review of the record of conviction. In ruling on defendant's petition, the trial court looked to the prior nonpublished appellate opinion on defendant's direct appeal, *Anderson I*, *supra*, A061968.[6] This was not improper, as an appellate opinion is part of the record of conviction and may be relied upon when probative of the basis of a defendant's conviction. (*People v. Woodell* (1998) 17 Cal.4th 448, 457 (*Woodell*) ["appellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue"]; *People v. Trujillo* (2006) 40 Cal.4th 165, 180 ["an appellate court decision . . . can be relied upon to determine the nature of a prior conviction because it may disclose the facts upon which the conviction was based"].)

In his direct appeal, defendant challenged his first degree murder conviction on the ground that the jury was instructed on both felony murder and provocative acts, but the court failed to give a unanimity instruction.[7] As explained in *Anderson I*, *supra*, A061968, "The trial court instructed the jury it could find appellants guilty of first degree murder under two separate

---

[6] The trial court also took judicial notice of the court file, and apparently, reviewed jury instructions—at least as to the provocative acts theory.

[7] Defendant's codefendant, Edward Morgan, raised the same claim.

15

theories: felony murder or provocative acts.  The felony murder theory was premised on evidence which suggested Yates was killed when he accidentally stepped into Anderson's line of fire.  Accordingly, the court told the jury the killing was first degree murder if it occurred during the commission or attempted commission of a robbery.  The provocative acts theory was based on isolated evidence which suggested Pete H. was armed, and that when he was confronted by Morgan he fired a defensive shot which hit and killed Yates.  In recognition of this evidence, the court instructed the jury appellants could be convicted of first degree murder if the killing was committed by the victim of a robbery in reasonable response to a provocative act committed by one of the defendants." *Anderson I* rejected defendant's argument that a unanimity instruction was required.

Relying on this summary in evaluating defendant's 1170.95 petition, the trial court observed that defendant was convicted of first degree murder based either on a felony-murder or provocative acts theory.  The trial court reasoned that "[t]he felony murder theory was premised on evidence that Yates was killed when he accidentally stepped into [defendant's] line of fire," and thus defendant "was the actual killer."  If he was convicted as the actual killer, defendant would not be eligible for resentencing under section 1170.95. (§ 189, subd. (e)(1).)  Senate Bill 1437 amended section 189, subdivision (e)(1) to provide a participant in the perpetration of a felony in which a death occurs is liable for murder where the person was the actual killer.  (Stats. 2018, ch. 1015, § 3; § 189, subd. (e)(1).)  Thus, the trial court correctly reasoned that if defendant was convicted as the actual killer, he would not be eligible for resentencing.

On the other hand, if defendant was convicted of first degree murder on a provocative acts theory, he likewise would be ineligible for resentencing.  In

16

*People v. Lee* (2020) 49 Cal.App.5th 254 (*Lee*), review granted July 15, 2020, S262459, the appellate court determined that perpetrators of provocative acts are not entitled to resentencing under section 1170.95. As the *Lee* court explained, provocative acts murder is distinguishable from the felony-murder rule, and "[u]nlike felony murder or murder under the natural and probable consequences doctrine, '[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused' the death of another accomplice." (*Lee*, at p. 264.) Because a jury had necessarily found Lee acted with malice aforethought as required by section 188, Lee could not show he was eligible for resentencing based on changes made to sections 188 or 189 by Senate Bill 1437. (*Lee*, at pp. 264–265.)

We agree with the *Lee* court's analysis, and conclude the same is true here. The jury was instructed it must find a person committing the crime intentionally committed a provocative act, the provocative act was deliberately performed with knowledge of the danger to and conscious disregard for human life, and the defendant personally participated in the conduct which provoked the lethal response by the victim. Moreover, it was instructed that malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life. If the jury found defendant guilty on a provocative acts theory, it necessarily found he acted with malice and intentionally committed a provocative act that proximately caused Yates's death.[8]

---

[8] On reply, defendant does not contend *Lee* was wrongly decided—only that it is not final because the Supreme Court has granted review and "it has not been proven beyond a reasonable doubt that [defendant] was convicted on

17

Defendant nonetheless argues the trial court erred in relying on the statement of facts in the prior appellate opinion because the facts summarized therein were not proven beyond a reasonable doubt. We find his argument unavailing.

In *Woodell, supra,* 17 Cal.4th 448, our high court held a jury properly relied on a North Carolina appellate opinion as part of the "record of conviction" to determine whether a defendant's prior assault conviction was based on personal weapon use or vicarious liability. (*Id.* at pp. 459–460.) Defendant cites *Woodell*, however, to argue the trial court here should *not* have relied on *Anderson I*, *supra*, A061968, quoting the *Woodell* court's admonition that the admissibility of an appellate opinion for the "nonhearsay purpose" of determining the basis of a defendant's prior conviction depends on whether "the opinion as a whole, including any factual statements, is probative on whether the conviction was based on a qualifying theory." (*Woodell*, at p. 460.) Defendant contends that because *Anderson I* does not address the "precise issues raised in [defendant's] petition" and did not contain "findings beyond a reasonable doubt concerning the theories of conviction, [defendant's] level of involvement, or whether he displayed reckless indifference to human life," it "simply does not supply a sole basis for the trial court's factual findings" on his section 1170.95 petition. Defendant

---

a provocative act theory." Of course, pending review by our Supreme Court, we may rely on published opinions for their persuasive value. (Cal. Rules of Court, rule 8.1115(e)(1).) And as explained above, the record of conviction makes clear that defendant was proven guilty beyond a reasonable doubt on *either* a provocative act theory or on a felony-murder theory because he was the actual killer. Under either theory, he is ineligible for resentencing as a matter of law.

further contends the trial court could not engage in its own factfinding or weighing of the evidence in determining defendant's eligibility.[9]

The problem with defendant's argument is twofold. First, defendant is correct that when introduced *at trial* to prove a defendant's conduct, the contents of an appellate court opinion are subject to the ordinary rules of evidence regarding the admission of hearsay. (See *Woodell*, *supra*, 17 Cal.4th at pp. 457–458.) But in posttrial proceedings, statements contained in prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial. (See *People v. Guilford*, *supra*, 228 Cal.App.4th at p. 660 [prior appellate opinion was admissible in Prop. 36 proceeding].)

Second, contrary to defendant's contention, the trial court here did not weigh evidence or engage in its own factfinding about the circumstances of the crime. As noted above, in explaining its rationale for denying his resentencing petition, the trial court reasoned the felony-murder theory was based on facts showing defendant was the actual killer. "Alternatively," the trial court reasoned, "the provocative acts theory was based on isolated evidence which suggested [Pete H.] was armed and fired a defensive shot which hit and killed Yates." The trial court quoted the jury instruction on provocative acts, then explained that "[s]hould the jury have convicted [defendant] under the provocative acts theory, [defendant] still would have been convicted on a valid theory of murder which survives the changes to

---

[9] We note defendant does not contend *Anderson I*, *supra*, A061968 (or the trial court's recitation of facts therefrom) was inaccurate in any respect. (See *Woodell*, *supra*, 17 Cal.4th at p. 457 ["If the appellate court did state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial record."]; *People v. Guilford* (2014) 228 Cal.App.4th 651, 660 [defendant claimed he was denied hearing to contest trial court's interpretation of facts in prior appellate opinion but made no claim the "prior opinion *misstated* them"].)

19

Penal Code sections 188 and 189 made by [Senate Bill] 1437. (Pen. Code, § 1170.95, subd. (a)(3).)" The court reasoned that "to find [defendant] guilty of first degree murder under the provocative acts theory, the jury would need to have found that [defendant] personally and deliberately committed a provocative act in addition to the robbery that was performed with the knowledge of the danger to and with conscious disregard for human life."

As is evident from its ruling, the trial court looked to the prior appellate opinion, not to determine what actually happened, but for the nonhearsay purpose of determining the factual and legal basis of defendant's first degree murder conviction. As the *Woodell* court held, that is permissible. (*Woodell, supra*, 17 Cal.4th at p. 460 ["The appellate court's discussion of the evidence is relevant and admissible, not to show exactly what the defendant did, but to show whether the [trier of fact] found, at least impliedly, that the conviction was based on personal use rather than vicarious liability."].)

We also note the facts of this case are distinguishable from *Cooper*, where the trial court improperly relied on testimony from the preliminary hearing to conclude the defendant was ineligible for resentencing. As we explained there, " '[a]t the preliminary hearing, the magistrate is called upon only to determine whether the factual showing is sufficient to establish probable cause to believe the defendant committed a felony,' a 'fundamentally different factual determination[ ]' than the determination at trial of guilt beyond a reasonable doubt." (*Cooper, supra*, 54 Cal.App.5th at p. 123.) Here, by contrast, the trial court relied on the appellate opinion to determine the basis of the jury's finding of guilt beyond a reasonable doubt based on the theories presented at trial and the verdicts rendered.

Defendant also contends the trial court's reliance on the appellate opinion's statement of facts without granting him an opportunity to "participate in the parsing of the factual findings" is a violation of his federal due process right to fair notice and a meaningful opportunity to be heard. None of the cases defendant cites in support of this argument concern due process rights in the context of a postconviction resentencing petition.[10] But even assuming defendant had a due process right to address the trial court's use of the prior appellate opinion, he has not offered any explanation how it would have produced a different result where he was ineligible for resentencing as a matter of law. And even with the benefit of counsel on appeal, defendant has not explained how he meets the requirements for resentencing under the statute where the jury convicted him beyond a reasonable doubt either as the actual killer or on a provocative acts theory. Under the circumstances of this case, the failure to appoint counsel after receiving defendant's petition was harmless beyond a reasonable doubt.

Because we are satisfied the record of conviction shows defendant is ineligible for resentencing relief as a matter of law, the trial court's error in failing to appoint counsel was harmless error under any applicable standard.

### III.  DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

---

[10] Defendant cites *Woodell*, *supra*, 17 Cal.4th 448, which concerned use of a prior appellate opinion at trial and did not address the defendant's due process rights; *Lachance v. Erickson* (1998) 522 U.S. 262, 266–268 (stating principle that due process requires notice and a meaningful opportunity to be heard but rejecting appellants' argument that due process precludes federal agency from sanctioning employee for making false statements); and *Vitek v. Jones* (1980) 445 U.S. 480, 488 (whether involuntary transfer of prisoner to mental hospital implicates liberty interest protected by due process).

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


BANKE, J.


A156857
*People v. Anderson*